UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA H.,<br><br>         Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 20cv2532-RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15] AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 16]** |

On December 30, 2020, Plaintiff Maria H.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits [ECF No. 1].[2] Plaintiff consented to magistrate judge jurisdiction and the case was referred to this Court

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).
[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

to conduct all proceedings on April 26, 2021 [ECF No. 11].[3]  Defendant filed the Administrative Record on July 2, 2021 [ECF No. 12].  On August 27, 2021, Plaintiff filed a Motion for Summary Judgment [ECF No. 15].  Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment on September 24, 2021 [ECF No. 16].  Plaintiff filed a Reply on October 1, 2021 [ECF No. 17].

For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

Plaintiff Maria H. was born in 1961 and previously worked as a motel front desk clerk and hospital registration clerk.  (Admin. R. 43-45, 281, ECF No. 12.)[4]  On or about January 17, 2018, Plaintiff filed applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act.  (Id. at 19, 228-33, 243-46.)  She alleged that she had been disabled since July 15, 2017, due to bilateral tendonitis, high blood pressure, and chronic knee and back pain.  (Id. at 295.)  Maria H.'s applications were denied on initial review and again on reconsideration.  (Id. at 127-31, 135-40.)  An administrative hearing was conducted on August 6, 2020, by Administrative Law Judge ("ALJ") Peter J. Valentino.  (Id. at 37.)  On August 21, 2020, the ALJ issued a decision and concluded that Maria H. was not disabled.  (Id. at 19-30.)  Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request

---

[3] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

[4] The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court cites to the page numbers affixed by CM/ECF.

on November 18, 2020. (Id. at 1-3.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C.A. § 405(g), 421(d) (West 2011). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the

applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. § 423(d)(1)(A), (2)(A) (West 2011).  An applicant must meet both requirements to be classified as "disabled."  Id.  The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520.  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b) (2019).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four.  Id. § 404.1520(e).  Fourth, the Commissioner determines whether the claimant can do his or her past relevant work.  If the claimant can do their past work, benefits are denied.  Id. § 404.1520(f).  If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(g).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.  Id.

### III.  DISCUSSION

Plaintiff's sole contention is that the ALJ failed to articulate clear and convincing reasons to reject her testimony regarding the severity of her symptoms. (Pl.'s Mot. Attach. #1 Mem. P. & A. 8-14, ECF No. 15.)

**A.  ALJ's Decision**

In his decision, ALJ Valentino employed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 15, 2017, her alleged onset date (step one). (Admin. R. 21, ECF No. 12.)  He concluded that Maria H. had severe impairments− degenerative disc disease in the lumbar and cervical spines and obesity (step two). (Id.)[5] The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (step three). (Id. at 25.)  He then found that Maria H. retained the residual functional capacity to perform the full range of light work, except she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. (Id.)  ALJ Valentino next determined that Plaintiff was able to perform her past relevant work as a front desk clerk and registration clerk (step four). (Id. at 29.)  The ALJ accordingly found that Maria H. had not been under a disability from July 15, 2017, through the date of his decision. (Id. at 30.)

**B.  Plaintiff's Testimony Regarding the Severity of her Symptoms**

At the administrative hearing, Plaintiff testified why she stopped working. "My hands were falling asleep all the time because of my tendonitis.  I was always like getting dizzy.  I didn't know why.  I didn't know at that time that I had real bad vertigo.  And I was, I was in a lot of pain." (Id. at 46.)  She stated that she did not want to stop working

---

[5] The ALJ found Plaintiff's asthma, plantar fasciitis, knee pain, carpal tunnel syndrome, hypertension, reflux esophagitis, diabetes mellitus, and depression are non-severe impairments. (Admin. R. 22-23, ECF No. 12.)

but had to because "I have so many complications right now[,]" including vertigo, fibromyalgia, diabetes, and high blood pressure. (Id. at 48.) Maria H. testified that she has depression and anxiety and stays in her room at home. (Id. at 49.) When she washes dishes, she can work for ten minutes and must then sit down and rest for approximately thirty minutes before finishing. (Id. at 50-51.) She cannot be on her feet for more than an hour without her toes, legs, and back cramping. (Id. at 51-52.) She can sit comfortably for about an hour before needing to move. (Id. at 52.) When asked if she could perform a full-time job that was physically easy and not stressful, Maria H. testified that she could not. (Id. at 53.) She explained, "I can't do it no more. Like I said, I loved working. I started working when I was [seventeen], but I just can't no more. I used to push myself and not accept the fact that something was wrong with me." (Id.)

## C. ALJ's Analysis of Plaintiff's Subjective Symptoms

An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Garrison, 759 F.3d at 1014); see also SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 405.1529(b) (2019). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3P, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Garrison, 759 F.3d at 1014-15; see also

Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).[6] This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Lambert, 980 F.3d at 1277 (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)).

In this case, ALJ Valentino determined that Maria H. satisfied step one of the two-step analysis. (Admin. R. 27, ECF No. 12.) At the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence or other evidence in the record[.]" (Id.) The ALJ articulated three reasons for making this finding: (1) her daily activities were not as limited as one would expect given her claim of significant symptoms; (2) her allegations of disability were not supported by her physical exams; and (3) her back pain was stable, and she did not experience side effects from her treatment. (Id.) Plaintiff argues that these reasons were not clear and convincing. (Pl.'s Mot. Attach. #1 Mem. P. & A. 10-14, ECF No. 15.)

### 1. Plaintiff's daily activities

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective pain. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms). Daily activities may form the basis of an adverse credibility determination when evidence concerning the claimant's daily activities contradicts his or her testimony, or when the activities meet the threshold for full-time work. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021). "One does not need to be 'utterly incapacitated' in order to be

---

[6] The Commissioner contends that the "clear and convincing" standard is inconsistent with the deferential "substantial evidence" standard set forth in 42 U.S.C. § 405(g) but acknowledges that Ninth Circuit precedent requires its application. (Def.'s Opp'n 5 n.2, ECF No. 16.)

disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) (superseded on other grounds by 20 C.F.R. § 404.1502(a) (2017)); see also Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Here, the ALJ found that Maria H.'s report of significant symptoms resulting in limitations on activities of daily living was undermined by her testimony that "she retained the ability to care for her two granddaughters, including cooking for them" and also "retained the ability to drive and shop." (Admin. R. 27, ECF No. 12.)  Plaintiff argues that this was not a clear and convincing reason to reject the severity of her subjective complaints because her limited hearing testimony, consisting of six questions and answers about watching her grandchildren, cooking, driving, and shopping, was not inconsistent with her subjective complaints.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 10-11, ECF No. 15; Pl.'s Reply 3-4, ECF No. 17.)  She also contends that the ALJ failed to demonstrate how her ability to perform these activities is compatible with full-time work. (Pl.'s Mot. Attach. #1 Mem. P. & A. at 11.)

During the hearing, Plaintiff testified that she recently moved in with her daughter after separating from her partner of four years.  (Admin. R. 42, ECF No. 12.)  At the time of her testimony, her daughter, who is single, was in nursing school.  (Id. at 43.)  Maria H. stated that she cared for her granddaughters, ages eleven and six, while her daughter attended school.  (Id. at 42-43.)  She attested that she was "always there" as a grandmother and cooked for and bathed her granddaughters.  (Id. at 50.)  She further testified that her daughter paid her for helping with childcare.  (Id. at 48-49.)  Maria H.

confirmed that she has her driver's license and is able to drive to the doctor's office and grocery store. (Id. at 49.) Plaintiff characterizes these activities as "minimal" and claims they are neither inconsistent with her subjective complaints nor compatible with full-time work. (Pl.'s Mot. Attach. #1 Mem. P. & A. 11, ECF No. 15.)

Other evidence in the record, however, supports the ALJ's finding that Maria H.'s daily activities indicated that her symptoms were not as disabling as alleged. Plaintiff's intake form at Imperial County Behavioral Health completed on October 19, 2018, states that Maria H. was employed "[i]n her home as an IHSS [In-Home Supportive Services] caregiver and at daughter's home as her baby[]sitter." (Admin. R. 727, ECF No. 12.) According to the form, "She is currently the IHSS caregiver for her significant other[.] She is currently working 11.29 hours of care[]giving through the IHSS program per week. She also works caring for granddaughters in daughter's home after they are dismissed from preschool and school." (Id. at 728; see also id. at 593 (June 15, 2018 treatment note at treating physician Dr. Yong Tan's office reflecting that Plaintiff "works at a daycare"); id. at 612 (listing occupation as "babysitter" during initial visit to UCSD Healthcare rheumatology clinic on April 10, 2019).) A note by her physical therapist's office dated July 3, 2018, indicates that all of Plaintiff's appointments were scheduled at 3:30 p.m. because Maria H. stated that "she babysits and can[']t come any other time." (Id. at 606.) The ability to care for others, including young children, without assistance may undermine claims of a totally disabling impairment. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Given the extent of caregiving and babysitting activities reflected in the record, the ALJ could reasonably conclude that Plaintiff's daily activities undermined her testimony that she was incapable of working. Maria H.'s daily activities thus constituted a clear and convincing reason to discredit her testimony regarding the functional limitations caused by her symptoms.

///

### 2. Plaintiff's physical examination findings

The ALJ's second proffered reason for discounting Plaintiff's subjective symptoms was that her "physical examination findings . . . showed no discomfort, full strength, intact sensation, normal grip strength, intact cranial nerves, full range of motion, normal deep tendon reflexes, a normal gait, and no lower extremity edema or focal deficits." (Admin. R. 26, ECF No. 12.)  Maria H. contends that the ALJ was not entitled to rely solely on objective medical evidence to reject her subjective pain testimony.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 13, ECF No. 15.)  Although an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in his evaluation.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  In this case, ALJ Valentino referred to medical evidence in the record to support his finding that Plaintiff's physical examinations showed normal findings.  (See Admin. R. 26, ECF No. 12, citing, e.g., id. at 477, 519, 558, 594, 614, 635, 653, 660, 705, 750.)  The ALJ also cited medical evidence in the record supporting her subjective symptom allegations.  (Id. at 26, citing id. at 473, 519, 594, 653, 695, 705, 756, 797.)  But despite his observation that Maria H. exhibited both normal and abnormal findings during her examinations, the ALJ relied on the normal findings, and excluded the abnormal findings, to discount Plaintiff's subjective complaints.

Given the exam findings in the record supporting Plaintiff's pain allegations, the Court cannot find that Plaintiff's normal physical exam findings constituted a clear and convincing reason to discount her subjective symptom testimony.  For example, although the December 5, 2017 physical exam performed by Dr. Michael Keller, rheumatologist, yielded mostly normal findings, the exam also showed generalized tenderness in the joints in Plaintiff's hands.  (Id. at 476-77.)  On April 3, 2018, Plaintiff's primary care

provider, Dr. Tan, performed a physical examination and noted tenderness in Plaintiff's neck and low back.  (Id. at 519.)  During Maria H.'s physical therapy evaluation on June 15, 2018, the therapist found impaired range of motion and strength "which limits her ability to perform her daily activities."  (Id. at 594.)  Plaintiff had a positive straight leg raising test and tenderness on palpation of her lumbar trigger points during an exam by Dr. Sayed Monis on July 16, 2019.  (Id. at 653.)  And on August 14, 2019, Dr. Keller observed that Plaintiff had "widespread pain on palpation" at diffuse trigger points, leading him to add Lyrica and Cymbalta to her prescribed medications.  (Id. at 705-06.)  This is not a case in which the medical evidence contained only normal findings.  Rather, Maria H.'s physical examinations yielded both normal and abnormal objective findings.  The Court thus finds that Plaintiff's physical examination findings both support and detract from her subjective symptom allegations and therefore the normal findings do not constitute a clear and convincing reason to reject her testimony regarding the severity of her symptoms.

### 3.  Stable back pain symptoms with no side effects from treatment

The ALJ's third reason for discounting Maria H.'s pain testimony was that "providers found [her] back pain symptoms were stable and that she did not experience side effects from her treatment."  (Id. at 27.)  He further explained that Plaintiff's physicians noted that her pain symptoms were "stable with medication and that she did not experience side effects from her medication."  (Id., citing id. at 750.)  ALJ Valentino additionally noted that Plaintiff "also underwent other conservative treatment options, including physical therapy and a back brace."  (Id., citing id. at 601, 797.)  Maria H. argues that the ALJ's finding is factually inaccurate because the record shows that her back pain was not stable but was progressively worsening.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 12, ECF No. 15.)  She also contends that the lack of side effects was not a

legitimate reason to discount her symptoms because she never claimed that her symptoms were a result of side effects.  (Id.; Pl.'s Reply 4, ECF No. 17.)

In assessing a claimant's subjective symptoms, an ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication" a claimant has taken to alleviate her pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(iv); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]").  In this case, the record reflects that the medications prescribed by Plaintiff's physicians helped her symptoms.  Plaintiff informed Dr. Robert Chao, a rheumatologist, that Tramadol and Baclofen "helped a lot for pain relief."  (Admin. R. 611, ECF No. 12.)  On April 25, 2019, Maria H.'s primary care provider, Dr. Tan, noted that Plaintiff's pain was stable, and she did not experience any side effects from taking her medication.  (Id. at 750.)

Under the regulations, treatment other than medication is also pertinent to evaluating a claimant's pain testimony.  See 20 C.F.R. § 404.1529(c)(3)(v).  Receiving only "minimal, conservative treatment" is a valid reason to discredit a claimant's symptom testimony.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see also Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).  Here, Plaintiff was referred to physical therapy for her neck and back pain by two of her physicians.  (See Admin. R. 520, ECF No. 12 (referral on April 3, 2018, by Dr. Tan), id. at 635 (July 16, 2019 referral by Dr. Moniz).)[7]  Dr.

---

[7] Plaintiff did not complete either course of physical therapy.  (See Admin. R. 607 (Plaintiff removed from physical therapy schedule on July 17, 2018, after failing to attend two appointments); id. at 756 (treatment note dated October 29, 2018, reflecting that Plaintiff stopped physical therapy after two sessions because she did not feel it was helping); id. at 651, 654 (August 27, 2019 treatment record by Dr. Moniz stating that "Patient did not complete PT" and indicating that she would be required to do so before MRIs of neck and back would be requested).)  Although the ALJ did not do so here, an ALJ may

12

Keller, her treating rheumatologist, prescribed a back brace on May 20, 2020.  (Id. at 797.)  Both physical therapy and a back brace are considered conservative treatment measures.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (characterizing physical therapy and a lumbosacral corset as conservative treatment).  The ALJ's rationale that Plaintiff's condition was stable with medication and treatment, without negative side effects, constituted a specific, clear, and convincing reason to discredit her symptom testimony.

When the ALJ provides valid reasons supported by the record for disbelieving a claimant's testimony, the provision of one or more invalid reasons is harmless error.  See Molina, 674 F.3d at 1115.  In this case, not all reasons articulated by the ALJ met the standard for discrediting Plaintiff's subjective symptom testimony.  Nevertheless, the ALJ articulated sufficient specific, clear, and convincing reasons supported by substantial evidence in the record to discount the severity of Plaintiff's symptoms.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  June 21, 2022

Hon. Ruben B. Brooks
United States Magistrate Judge

---

consider the failure to follow a prescribed course of treatment in evaluating a claimant's credibility.  Orn, 495 F.3d at 636 (citing Fair, 885 F.2d at 603).